# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 12, 2025        Decided August 7, 2026
Reargued September 17, 2025

No. 24-7150

GOCE GLIGOROV,
APPELLANT

v.

NATION OF BRUNEI, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01773)

---

*Kenneth Foard McCallion* argued the cause and filed the briefs for appellant.

*Stephen K. Wirth* argued the cause for appellees. With him on the briefs were *Guy A. Reiss*, *Peter B. Maretz*, *Adam Parry*, *Jason Ehrenberg*, *John B. Bellinger III*, and *Robert Reeves Anderson.*

Before: MILLETT, PILLARD, and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

2

MILLETT, *Circuit Judge*:  Goce Gligorov is a Slovenian national, businessman, and past consultant to the government of the Nation of Brunei.  He filed this civil suit against Brunei, certain Bruneian government officials, and three corporate entities.  The complaint alleges civil violations and conspiracy under the Racketeer Influenced and Corrupt Organizations Act, as well as a number of common law contract and tort claims.  The lawsuit arises from an agreement Mr. Gligorov made with some of the individual defendants and representatives of the Brunei government in which he was tasked with investigating corruption by other Bruneian officials.  Mr. Gligorov alleges that, after uncovering damaging information about corruption and support for terrorism by certain Bruneian government officials, his contractual employers reneged on the deal and then conspired, along with the three corporate defendants, to destroy Mr. Gligorov's reputation and business.  The three corporate defendants are Audley Property Management Company Limited, Seven Properties AG, and The Dorchester Group, LLC d/b/a The Dorchester Collection (collectively, "corporate defendants").

The district court dismissed Mr. Gligorov's claims against the corporate defendants for lack of personal jurisdiction and denied Mr. Gligorov's cross-motion for jurisdictional discovery.  The court then entered partial final judgment in favor of the corporate defendants under Federal Rule of Civil Procedure 54(b).

We affirm.

3

**I**

**A**

**1**

Personal jurisdiction refers to a court's authority over the parties. *Fuld v. Palestine Liberation Org.*, 145 S. Ct. 2090, 2102 (2025). A federal court can exercise personal jurisdiction over a defendant who does not consent to suit only if (1) the defendant is served in compliance with the terms of a statute or rule authorizing service of process, and (2) the exercise of jurisdiction comports with the Constitution. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see Fuld*, 145 S. Ct. at 2102.

**2**

Prior to 1993, the Federal Rules authorized service on civil defendants who were outside the State in which the district court sat only if service was authorized by "a federal statute or * * * the long-arm statute of [that] State[.]" *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 105 (1987) (citing FED. R. CIV. P. 4(e) (1963)).

In *Omni Capital*, the plaintiffs sued foreign defendants under the Commodity Exchange Act's implied private right of action. *See Omni Cap.*, 484 U.S. at 100 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982)). The Court declined to conclude that the Act impliedly authorized service of process on foreign defendants, and the relevant state long-arm statute did not reach them either. *See id.* at 106–108. Because nothing in federal law or the federal rules addressed that problem, the Supreme Court recommended that Congress or the federal courts' Standing Committee on

Rules of Practice and Procedure consider adopting "[a] narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute[.]" *Id.* at 111.

In response, the Standing Committee adopted Federal Rule of Civil Procedure 4(k)(2), which provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2); *see also Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005) ("[T]he Rules now contain their *own* long-arm provision which, in some circumstances, eliminates the need to employ the forum state's long-arm statute.").

The Advisory Committee's Notes for the amendment that added Rule 4(k)(2) explain that the provision was adopted to "correct[] a gap in the enforcement of federal law" for federal-law claims against "non-resident" defendants who "hav[e] contacts with the United States sufficient to justify the application of United States law," but who "hav[e] insufficient contact with any single state[.]" FED. R. CIV. P. 4(k) Advisory Committee's note to 1993 amendment.

**3**

As relevant here, the Racketeer Influenced and Corrupt Organizations Act ("RICO") subjects those who are associated with an enterprise engaged in a "pattern of racketeering activity" to civil remedies and criminal penalties. 18 U.S.C. §§ 1962–1964. Racketeering activity "encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates." *RJR Nabisco v. European Community*, 579 U.S. 325, 329–330 (2016). The USA PATRIOT Act of 2001 made providing material support to terrorist organizations one such RICO predicate. Pub. L. No. 107-56, § 813, 115 Stat. 272, 382; *see* 18 U.S.C. § 1961(1) (Offenses listed "in section 2332b(g)(5)(B)" are predicate acts.); *id.* § 2332b(g)(5)(B) (listing "providing material support to terrorist organizations" as one form of committing the predicate act "Federal crime of terrorism").

RICO has a private cause of action, known as civil RICO, that allows plaintiffs to sue defendants who injured them "by reason of a violation" of RICO. 18 U.S.C. § 1964(c).

Personal jurisdiction over a civil RICO defendant lies in "any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a); *see FC Inv. Group v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008) (holding that Section 1965(a) concerns personal jurisdiction), *overruled on other grounds*, *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021); *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 118–119 (3d Cir. 2020) (same); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (same). Once personal jurisdiction is established under Section 1965(a) for one defendant, service of process outside the judicial district is authorized under Section 1965(b) for any other party in the

same action when "the ends of justice require that other part[y]" be "brought before the court[.]" 18 U.S.C. § 1965(b); *see FC Inv. Group*, 529 F.3d at 1099–1100.

**B**

According to the allegations in the second amended complaint, Mr. Gligorov is a Slovenian businessman. As early as 2011, Mr. Gligorov "met with high-ranking officials in Brunei and was invited to attend numerous Brunei state events." App. 20. Representatives of Brunei's government, including some of the individual defendants in this suit, "asked [him] to * * * provide them with information relating to allegations of wrongful and illegal acts by other Brunei government officials." App. 20–21. Mr. Gligorov agreed to do so through a contract that promised to pay him $250,000 for his services. In 2016, Mr. Gligorov turned over the requested investigative findings, including information about certain Bruneian government officials' alleged involvement in theft, money laundering, and terrorism financing.

Mr. Gligorov's investigation assertedly revealed that high-ranking officials were using bank accounts "associated with" the three corporate defendants to "disguise Brunei's financing of terrorist organizations." App. 21, 23–24. In particular, Mr. Gligorov alleges that these officials, including some of the individual Bruneian government defendants, funneled money through Seven Properties' bank accounts in Zurich and Audley's bank accounts in London. Also, "[w]ith the knowledge and cooperation of officers and agents of the Dorchester Group," the Bruneian government and the individual defendants allegedly "used bank accounts maintained with Royal Bank of Scotland [and] NatWest Bank" in London. App. 24. Mr. Gligorov does not allege that any of

the corporate defendants' bank accounts relevant to this case are in the United States.

The complaint also alleges that all three corporate defendants maintained "safe houses" or "safe rooms" that the individual defendants and "other agents of the Brunei Government" used to engage in "clandestine meetings" with terrorist organizations and their proxies. App. 23–24. Mr. Gligorov does not allege that any of Seven Properties' or Audley's safe houses or safe rooms are in the United States. The complaint does allege, however, that the Dorchester Group has "safe rooms" in its two U.S. properties: the Beverly Hills Hotel and Bel Air Hotel, both of which are in California. App. 15.

When Mr. Gligorov delivered his findings to his Bruneian contacts, the individual defendants allegedly "turned on" Mr. Gligorov and plotted to "prevent his information from being made public and to destroy his reputation and business in the process" so that no one would believe the information he had gathered. App. 25–26. These defendants also "failed to pay him the $250,000 that was owed" under the contract. App. 25.

The complaint next alleges that "safe rooms" at the Dorchester Group's "hotels and facilities" were "used by the individual Brunei defendants * * * and representatives of the corporate defendants * * * for meetings to plan and strategize regarding defendants' campaign to damage and destroy [Mr. Gligorov's] reputation and business[.]" App. 26. "At least one of these clandestine meetings * * * too[k] place at the Beverly Hills Hotel" in California. App. 26. The Defendants then "made false and defamatory allegations about [Mr. Gligorov] to INTERPOL, causing a 'Blue Notice' to be issued by that * * * agency," which resulted in Mr. Gligorov being stopped at the United States' and other international borders. App. 27.

According to the complaint, the Blue Notice has interfered with Mr. Gligorov's "ability to conduct his business [and] * * * has seriously damaged his business and reputation."  App. 28.

## C

Mr. Gligorov filed suit in the United States District Court for the District of Columbia.  His second amended complaint alleges that the corporate defendants violated RICO, conspired to violate RICO, and tortiously interfered with his business.  He also alleges that Seven Properties and the individual Bruneian defendants engaged in defamation *per se*, and that the Brunei Investment Agency and certain Bruneian government officials are liable for breach of contract, unjust enrichment, fraud, and fraudulent inducement.  Only the three corporate defendants were properly served and have appeared in the case.  *See Gligorov v. Nation of Brunei*, No. 21-cv-1773, 2024 WL 4523861, at *1 (D.D.C. Sept. 26, 2024).

The corporate defendants moved to dismiss Mr. Gligorov's complaint for lack of personal jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively.  Mr. Gligorov cross-moved for jurisdictional discovery.

Mr. Gligorov attached to his motion for jurisdictional discovery a declaration from Ronald Dunnett, an investigator, that identified the dates and attendees of four meetings that took place at the Beverly Hills Hotel.  Those meetings took place from November 2015 to August 2019 and included various Bruneian government officials as attendees.  The Dunnett declaration does not discuss either the existence of "safe rooms" or the presence of any corporate defendants at those meetings.

The district court dismissed Mr. Gligorov's complaint for lack of personal jurisdiction over the corporate defendants and did not address whether the complaint failed to state a claim. *See Gligorov v. Nation of Brunei*, No. 21-cv-1773, 2023 WL 1438326, at *1 (D.D.C. Jan. 31, 2023). The court also denied Mr. Gligorov's request for jurisdictional discovery. *Id.* at *6.

The district court first ruled that it lacked general jurisdiction over the corporate defendants because none of the corporate defendants are incorporated, have their principal place of business, or are fairly considered at home in the District of Columbia. *Gligorov*, 2023 WL 1438326, at *2.

The court next held that Mr. Gligorov failed to show specific jurisdiction based on the civil RICO statute because he had not established that at least one defendant had minimum contacts with the District of Columbia. *Gligorov*, 2023 WL 1438326, at *3. Mr. Gligorov had tried to meet this requirement by arguing, unsuccessfully, that the Nation of Brunei had minimum contacts with the District. *See id. at *4.

As for Mr. Gligorov's argument that there was personal jurisdiction over the corporate defendants because they were served in accordance with Federal Rule of Civil Procedure 4(k)(2), the court concluded that Mr. Gligorov had not shown that any of the corporate defendants had "sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Fifth Amendment Due Process Clause." *Gligorov*, 2023 WL 1438326, at *4.

Lastly, the district court denied Mr. Gligorov's motion for jurisdictional discovery on the grounds that his allegations were "speculat[ive]" and "broad in scope," and that none of the requested discovery "would help to show whether the Corporate Defendants 'purposefully directed' activities toward

the United States that resulted in the alleged injuries and that this litigation 'arises out of or relate[s]' to those activities." *Gligorov*, 2023 WL 1438326, at \*6 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The district court subsequently entered partial final judgment as to the corporate defendants under Federal Rule of Civil Procedure 54(b). *Gligorov*, 2024 WL 4523861, at \*2. Mr. Gligorov timely appealed.

After we heard oral argument in this appeal, the Supreme Court ruled in *Fuld v. Palestine Liberation Organization*, *supra*, that the Fifth Amendment's due process guarantee does not incorporate the Fourteenth Amendment's minimum contacts standard for personal jurisdiction in state courts, 145 S. Ct. at 2105; *cf. International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945) (establishing the minimum contacts test under the Fourteenth Amendment). In *Fuld*'s wake, we ordered supplemental briefing and re-argument on the appropriate test for personal jurisdiction under the Fifth Amendment in this case.

## II

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). We have appellate jurisdiction under 28 U.S.C. § 1291. We review the district court's dismissal for lack of personal jurisdiction *de novo* and the denial of jurisdictional discovery for abuse of discretion. *Lewis v. Mutond*, 62 F.4th 587, 590 (D.C. Cir. 2023); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017).

The plaintiff bears "the burden of establishing a factual basis for the court's exercise of personal jurisdiction over" the defendant. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C.

Cir. 2014). To do so, plaintiffs "may rest their [jurisdictional] argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7; *see Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787–788 (D.C. Cir. 1983). In reviewing a motion to dismiss for lack of personal jurisdiction, courts must "assume the truth of facts plausibly alleged in [a] plaintiff's * * * complaint and draw all reasonable inferences in [the plaintiff's] favor." *Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 392 (D.C. Cir. 2024) (citing *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 40 n.2 (D.C. Cir. 2020)). But the court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts[.]" *Livnat*, 851 F.3d at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).

## III

This appeal turns on a single issue: whether the district court had personal jurisdiction over the corporate defendants under the Fifth Amendment.

This court had previously held that the Fifth Amendment's Due Process Clause imposed the same limits on the level of forum-specific contacts needed for a federal court's exercise of personal jurisdiction as the Fourteenth Amendment imposes on States. *See, e.g.*, *Lewis*, 62 F.4th at 592; *Livnat*, 851 F.3d at 55. But after the initial oral argument in this case, the Supreme Court ruled for the first time that the Fifth Amendment's due process limits on personal jurisdiction in federal cases are "more flexible" than the minimum-contacts requirement that applies under the Fourteenth Amendment. *Fuld*, 145 S. Ct. at 2105; *see id.* ("[W]e decline to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment."). At the same time, the Supreme Court declined to prescribe a new test to take the place of the minimum-

contacts inquiry. *See id.* at 2106 ("[W]e do not purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts.").

We need not determine what that test is to resolve this appeal. The parties have agreed that, for purposes of this case, the Fifth Amendment requires only that the exercise of personal jurisdiction over a defendant be "reasonable," and that a reasonable nexus to the United States exists. *See* Gligorov Second Suppl. Br. 1 ("[T]he Fifth Amendment requires only that the assertion of personal jurisdiction be reasonable in light of federal sovereignty, congressional authorization, and basic fairness."); *id.* at 13 ("The question is whether the Corporate Defendants' conduct sufficiently ties them to the United States in a way that makes jurisdiction reasonable."); Corporate Defs.' Corrected Second Suppl. Br. 20 ("This Court should * * * continue to require a meaningful U.S. nexus and reasonableness under Rule 4(k)(2)(B) unless and until Congress passes a carefully calibrated statute that says otherwise.").

Lack of personal jurisdiction is the corporate defendants' defense to assert or to waive. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Equally, a plaintiff can forfeit theories of personal jurisdiction by failing to raise them in briefing. *Erwin-Simpson*, 985 F.3d at 889 n.1. Accordingly, for purposes of this appeal only, we will assume without deciding that a "reasonableness" test applies.

Applying that assumption, we conclude that the district court lacked jurisdiction over the corporate defendants. Mr. Gligorov has failed to adequately allege a concrete interest in litigating this case in the United States. He also has not

identified any meaningful interest that the United States has in resolving this dispute. *Cf. Fuld*, 145 S. Ct. at 2109. Nor has he explained how this suit would avoid unreasonably burdening defendants with scant connections to the United States.

## A

This case implicates two possible avenues for obtaining personal jurisdiction: (1) the RICO statute's service of process provision, and (2) Federal Rule of Civil Procedure 4(k)(2). Both routes would also have to comply with the Fifth Amendment's Due Process Clause. On this record, neither route provides personal jurisdiction over the corporate defendants.

## 1

RICO's service of process provision affords Mr. Gligorov no traction in his effort to establish personal jurisdiction. Although the complaint asserts claims under the civil RICO statute, Mr. Gligorov failed to perfect service over the corporate defendants as RICO requires.

Section 1965(a) of RICO authorizes personal jurisdiction over anyone who "is found, has an agent, or transacts his affairs" in the federal judicial district where the district court sits—that is, the District of Columbia. 18 U.S.C. § 1965(a). Mr. Gligorov argues that the Nation of Brunei is present through its embassy and transacts its affairs in the District of Columbia, which makes personal jurisdiction over Brunei proper under Section 1965(a). And once personal jurisdiction is established over one defendant in a RICO case, the statute extends personal jurisdiction over all other properly served

defendants when "the ends of justice [so] require[.]" *Id.* § 1965(b); *see FC Inv. Group*, 529 F.3d at 1100.

Brunei, however, is a foreign sovereign nation. As a result, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, generally provides the "sole basis for obtaining jurisdiction over" Brunei in the courts of the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see Nassif v. Republic of Iraq*, 166 F.4th 1099, 1101 (D.C. Cir. 2026). While Congress can "enact[] a later exception to foreign sovereign immunity[,]" *Exxon Mobil Corp. v. Corporación Cimex, S.A. (Cuba)*, 146 S. Ct. 1909, 1924 (2026), Mr. Gligorov has not identified any exception that would apply in this case.

The FSIA grants personal jurisdiction over a foreign sovereign only when "service has been made" in compliance with that statute's terms. 28 U.S.C. § 1608(d); *see id.* §§ 1330(b), 1608(a)–(b) (specifying service requirements). But Mr. Gligorov admits that he has not served Brunei at all, let alone in accordance with the FSIA. Gligorov Opening Br. 23 n.6; Gligorov Reply Br. 7 ("Plaintiff has not yet been able to effect service on the Nation of Brunei[.]"). And Mr. Gligorov has not argued that personal jurisdiction over any other defendant has been established under RICO Section 1965(a).

Because Mr. Gligorov fails to identify a single defendant over whom the district court could exercise personal jurisdiction under Section 1965(a), he has failed to establish

that any of the corporate defendants are subject to the court's jurisdiction under RICO's personal jurisdiction provision.[1]

**2**

With RICO's service provision unmet, Mr. Gligorov must rely on Federal Rule of Civil Procedure 4(k)(2) to establish personal jurisdiction over the three corporate defendants. That Rule provides that, in federal cases, service of a summons establishes personal jurisdiction if (i) the defendant "is not subject to jurisdiction in any state's courts of general jurisdiction," and (ii) "exercising jurisdiction is consistent with the United States Constitution and laws." FED. R. CIV. P. 4(k)(2).[2]

---

[1] In February 2023, the district court ordered Mr. Gligorov to show cause why he had not yet served "at least 10 Defendants," including the Nation of Brunei. Min. Order to Show Cause (Feb. 3, 2023). Mr. Gligorov responded that he would continue to attempt to effect service. Response to Order to Show Cause, Dkt. No. 46 (Mar. 4, 2023). Mr. Gligorov attached to his motion for entry of judgment under Rule 54(b) a declaration by one of his attorneys attesting that "the attempted service regarding the other defendants in the case is by no means imminent." Decl. of Kenneth F. McCallion ¶ 5, Dkt. No. 48-1. As far as the docket reflects, Mr. Gligorov has not provided any updates regarding service of process.

[2] This court has held that, in determining whether a defendant is subject to jurisdiction in any State's courts of general jurisdiction within the meaning of Federal Rule of Civil Procedure 4(k)(2)(B), we need not "traipse through the 50 states, asking whether each could entertain the suit." *Mwani*, 417 F.3d at 11 (formatting modified). Instead, at least when a State's jurisdiction is not apparent from the face of the complaint, "so long as a defendant does not concede to jurisdiction in another state, a court may use [Rule] 4(k)(2) to confer jurisdiction." *Id.* (formatting modified).

The corporate defendants do not dispute that service of process on them was proper under Rule 4(k)(2) on the ground that they are not subject to the jurisdiction of any State. *See* Oral Arg. Tr. 45:8–10 (Sept. 17, 2025); *see* Corporate Defs.' Br. 16–17. They argue only that the court's exercise of personal jurisdiction under Rule 4(k)(2) would be unconstitutional under the Fifth Amendment's Due Process Clause. *See* Corporate Defs.' Br. 16–17.

In *Fuld*, the Supreme Court upheld against a Fifth Amendment due process challenge a statute that grants federal courts personal jurisdiction over the Palestine Liberation Organization and the Palestinian Authority in suits under the Antiterrorism Act of 1990, Pub. L. No. 101-519, § 132, 104 Stat. 2250, 2250–2252 (codified at 18 U.S.C. § 2331 *et seq*.), for specified conduct. *See Fuld*, 145 S. Ct. at 2099, 2110; 18 U.S.C. § 2334(e)(1) ("[A] defendant shall be deemed to have consented to personal jurisdiction" if the defendant takes predicate actions including "conduct[ing] any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority."). Relying on a then-standard playbook in the courts of appeals, the defendants contended that they lacked minimum contacts with the United States, and so the statute violated the Fifth Amendment. *Fuld*, 145 S. Ct. at 2101. The Supreme Court rejected that argument. *Id.* at 2104–2106.

The Court explained that an exercise of personal jurisdiction over the Palestine Liberation Organization and the Palestinian Authority complied with the Fifth Amendment because, among other things, the challenged statute "tie[d] the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States" and gave the defendants advance notice of the jurisdictional consequences of their actions. *Fuld*, 145 S. Ct. at 2109–2110.

In addition, the Court recognized that the jurisdiction-conferring statute "reflect[ed] the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of national security and foreign affairs' and fairness to these particular defendants[.]" *Id.* at 2107 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33–34 (2010)).

The Court also reasoned that, assuming the Fifth Amendment imposes a reasonableness requirement, it was met based on factors such as the burden on the defendant, whether the defendant received notice, the forum state's interest, and the plaintiff's interest in relief. *See Fuld*, 145 S. Ct. at 2109; *id.* at 2110 (The defendants "were put on clear notice—far more than most defendants in the mine-run of litigation—that continuing to engage in certain specified conduct would open them up to potential federal court jurisdiction.").

While *Fuld* dealt only with Congress's ability to extend personal jurisdiction by statute, the Supreme Court broadly "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment." 145 S. Ct. at 2105. The full reach of that holding remains unclear. *See id.* ("Any difference between the Fifth and Fourteenth Amendments is * * * implicated *in only a subset* of federal cases, such as those in which personal jurisdiction is * * * 'authorized by a federal statute.'") (emphasis added) (quoting FED. R. CIV. P. 4(k)(1)(C)).[3]

Because personal jurisdiction here flows, if at all, from a court-made rule rather than a statute, this case is an odd fit for

---

[3] This court recently held that *Fuld* does not alter the standard for personal jurisdiction in the District of Columbia's local courts. *Akhmetshin v. Browder*, --- F.4th ----, No. 25-7008, 2026 WL 2066200, at *3–4 (D.C. Cir. July 17, 2026).

the Supreme Court's analysis in *Fuld*. As a court-promulgated rule, Rule 4(k)(2) does not communicate any substantive federal policy or congressional interest in subjecting defendants to federal jurisdiction. 28 U.S.C. § 2072(b); *see also Omni*, 484 U.S. at 111 (proposing adoption of Rule 4(k)(2) by the Advisory Committee); *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 234 (5th Cir. 2022) (*en banc*) (Rule 4(k)(2) is "just a procedural rule about issuing summonses."); *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 93 (1st Cir. 2022) (Rule 4 only sets "forth various requirements for effectively serving a summons on a defendant in federal court[.]"). *Contrast Fuld*, 145 S. Ct. at 2107 (The challenged statute "reflects the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of national security and foreign affairs' and fairness to these particular defendants[.]") (quoting *Holder*, 561 U.S. at 33–34); *id.* at 2106–2108. And we recently cautioned that "[a]ny seemingly broad statements in [*Fuld*] must be 'read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.'" *Akhmetshin v. Browder*, --- F.4th ----, No. 25-7008, 2026 WL 2066200, at \*3–4 (D.C. Cir. July 17, 2026) (quoting *Olivier v. City of Brandon*, 146 S. Ct. 916, 925 (2026)).

We need not tread new ground, though, because the parties jointly agree that a test requiring reasonableness and a meaningful nexus to the United States should determine personal jurisdiction in this case. *See* Gligorov Second Suppl. Br. 7, 13; Corporate Defs.' Corrected Second Suppl. Br. 2. Accordingly, we follow the Supreme Court's example in assuming without deciding that the Fifth Amendment includes a requirement that the exercise of personal jurisdiction be reasonable, in accord with principles of "fair play and

substantial justice." *Fuld*, 145 S. Ct. at 2102 (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021)).  That reasonableness inquiry considers the plaintiff's interest in obtaining relief in the U.S. forum, the interests of the forum (here, as in *Fuld*, the United States), and the magnitude and fairness of the litigation burden imposed on each defendant.  *See id.* at 2109–2110.

**B**

Applying the parties' proposed test, Mr. Gligorov has failed to establish personal jurisdiction over any of the three corporate defendants.

*First*, Mr. Gligorov has failed to establish any interest on his part in litigating this case in the United States.  He is not a U.S. national or resident.  He does not claim that he owns or operates a business here, or even that he has any significant business ties to the United States.  *See* App. 28 (alleging loss of business with corporations based in Slovenia and Malaysia); App. 35 (claiming damages for breach of contract arising out of business with Brunei).  The closest Mr. Gligorov comes is his declaration asserting that "the Blue Notice and defendants' campaign to destroy my reputation cost me a lucrative consulting contract that I had with Crystal Cruises, which is based in Los Angeles, California, and Norwegian Cruise Lines, which does a great deal of business in the U.S."  App. 95.  Those allegations about *potential* job opportunities notably do not say that Mr. Gligorov's work with either company would have been in the United States or would even have related to those companies' U.S. presence.

*Second*, Mr. Gligorov has not identified any U.S. sovereign interest in entertaining this suit.  As to this factor, Mr. Gligorov insists only that "the United States has a profound

interest in curbing terrorism financing and protecting whistleblowers who expose such conduct." Gligorov Second Suppl. Br. 7–8; *see id.* at 5. But Mr. Gligorov does not explain how any of the corporate defendants' allegedly RICO-violating actions—virtually all of which occurred overseas and affected the overseas business of a foreign businessman, the alleged fallout from his contract with a foreign government, and the alleged activities of foreign-based corporate defendants—have any impact on those interests of the United States, its residents, or its property. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). *Contrast Fuld*, 145 S. Ct. at 2107 ("The Federal Government, relatedly, has a strong interest in permitting *American* victims of international terror to pursue justice in domestic courts.") (emphasis added).

*Third*, Mr. Gligorov has failed to establish that the burden on the corporate defendants would be low enough to outweigh the other two factors and render the exercise of jurisdiction reasonable.

The complaint does not allege that either Audley or Seven Properties has any offices, properties, business activities, or other presence in the United States. Only a single tenuous thread connects those companies to the United States: Mr. Gligorov's allegation "[u]pon information and belief" that unidentified "representatives" of Audley and Seven Properties attended "[a]t least one" meeting at the Dorchester Group's "Beverly Hills Hotel in Beverly Hills, California[.]" App. 26. That alone is far too little to constitute the type of "meaningful relationship" between the United States and Audley or Seven Properties that could reasonably justify an exercise of federal-court jurisdiction over these foreign defendants that the Political Branches have not endorsed. *Fuld*, 145 S. Ct. at 2109; *see Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction

into the international field.") (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).

Indeed, Mr. Gligorov does not present any argument that this suit would impose a justifiable burden on Seven Properties or Audley. All Mr. Gligorov says is that, because "[t]he *Dorchester Group* operates luxury hotels in California and conducts business in the United States[,] participation in U.S. litigation is not an undue hardship" for the Dorchester Group. Gligorov Second Suppl. Br. 7 (emphasis added). That argument does nothing to address the burden on Audley and Seven Properties of litigating in the United States.

Nor, given the complaint's thin allegations, is it enough to justify the litigation burden imposed on the Dorchester Group. To be sure, Mr. Gligorov's complaint draws some connections between the Dorchester Group and the United States, which he did not do for Audley and Seven Properties. Specifically, Mr. Gligorov alleges that (i) the Dorchester Group owns and operates the Beverly Hills and Bel Air Hotels in California; (ii) the Dorchester Group maintains "safe rooms" in these hotels for the purpose of holding and facilitating secret meetings; and (iii) the safe room in the Beverly Hills Hotel was used on several occasions for meetings with Bruneian officials to discuss plans to harm Mr. Gligorov economically and reputationally, including at least one meeting that included "representatives" of the corporate defendants. App. 15, 26, 97–98.[4]

_____

[4]  The first of the four meetings the Dunnett declaration identifies as having occurred at the Beverly Hills Hotel is not relevant because it occurred prior to Mr. Gligorov's delivery of his findings to Bruneian officials that allegedly gave rise to the conspiratorial actions against him. *See* App. 97 (Dunnett Decl.

But that business presence alone did not put the Dorchester Group on reasonable notice that it might be sued (i) by a foreign businessman who is not alleged ever to have set foot in the hotel or had any interactions with any hotel personnel or contractors for (ii) alleged activities far outside the Dorchester Group's hotelier bailiwick—engaging in a conspiracy to harm the overseas reputation of that foreign businessman—(iii) based on injuries suffered nowhere near its premises and almost exclusively outside of the United States. *Contrast Fuld*, 145 S. Ct. at 2110 (Defendants "have litigated [Antiterrorism Act] suits here for decades, and in the [challenged statute] were put on clear notice * * * that *continuing to engage in certain specified conduct* would open them up to potential federal court jurisdiction.") (emphasis added). Given both the lack of notice and the lack of any discernible U.S. interest in this suit, it would be unreasonable to exercise personal jurisdiction over the Dorchester Group under the totality of these unique circumstances.

The complaint's reference to a safe room in scare quotes adds nothing to the jurisdictional mix. The complaint nowhere explains what is meant by a "safe room"—whether it might be, for instance, a hardened room designed to shield occupants during a natural disaster, or a room with special security features. Nothing on the face of that term relates its usage to Mr. Gligorov's claims. At oral argument, Mr. Gligorov's counsel insisted that the "safe room" was a soundproofed room meant for confidential meetings, which "would be tested and searched for any surveillance equipment, recording equipment, before any particular meeting." Oral Arg. Tr. at 12:4–9, 13:12–13 (Sept. 17, 2025). But counsel rested that contention entirely

listing a meeting at the Beverly Hills Hotel on November 17, 2015); App. 21 (alleging that Mr. Gligorov started providing information to the Bruneian officials in 2016).

on the "declaration of Mr. Dunnett[,]" *id.* at 13:23–14:3, which nowhere mentions "safe rooms." Anyhow, a hotel's provision of rooms that allow for confidential business meetings does not, in itself, endorse or invite illicit behavior that would give rise to the United States' interest in hearing this case when nothing else connects that allegation to the United States' interests at home or abroad.

For all of those reasons, we conclude that it would not be reasonable to exercise personal jurisdiction over the corporate defendants.

## C

Mr. Gligorov separately argues that, to the extent the complaint's allegations do not establish personal jurisdiction, the district court should have granted jurisdictional discovery.

Mr. Gligorov seeks discovery of six categories of information from each corporate defendant:

> (a) the number of U.S. employees (by year); (b) locations of its bank accounts in the U.S.; (c) identification of any and all hotels and other businesses in the United States in which the [corporate defendant] has any * * * financial interest; (d) records of the [corporate defendant] or any of its U.S. subsidiaries or affiliates reflecting the number of guests who registered at its hotels located in the U.S.; (e) registration records of [corporate defendant] or any of its U.S. subsidiaries or affiliates reflecting Brunei government guests located in the United States; [and] (f) records reflecting any occupancy of rooms in [Audley or Seven Properties] hotels * * * and/or any hotels located in the U.S. owned and/or operated by the

Dorchester Group for meetings involving Brunei Government officials, any of the Individual Defendants, [and/or with] representatives of * * * the Corporate Defendants[.]

App. 93 (Audley); *see* App. 92 (Seven Properties and Dorchester Group).

A grant of jurisdictional discovery is appropriate when the plaintiff has "at least a good faith belief" that the discovery "will enable [him] to show that the court has personal jurisdiction over the defendant." *Aljabri v. bin Salman*, 106 F.4th 1157, 1165 (D.C. Cir. 2024) (quoting *Williams*, 756 F.3d at 786 (D.C. Cir. 2014)).

At the same time, jurisdictional discovery is not a "fishing expedition[,]" so it cannot be granted based on nothing more than "conjecture or speculation" as to whether jurisdictionally relevant information would be uncovered. *FC Inv. Group*, 529 F.3d at 1094 (quoting *Bastin v. Federal Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)). Jurisdictional discovery also is not warranted when plaintiffs fail to show "what facts additional discovery could produce that would affect [the court's] jurisdictional analysis[.]" *Mwani*, 417 F.3d at 17 (quoting *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994)); *see also, e.g.*, *Lewis*, 62 F.4th at 596 (affirming district court's denial of jurisdictional discovery because plaintiff's request was "unlikely to uncover" actions by the defendant that "target[ed] the United States").

The district court did not abuse its discretion in denying jurisdictional discovery.

To start, Mr. Gligorov has failed to develop any argument on appeal that his requested discovery would enable him to

show that the exercise of personal jurisdiction would be reasonable. In his post-*Fuld* briefing, Mr. Gligorov offers only conclusory references to jurisdictional discovery, without making the required showing. *See* Gligorov Second Suppl. Br. 16 ("Plaintiff has made precisely th[e] showing here" that he "has a good-faith basis to believe further evidence will confirm jurisdictional allegations.").

Beyond that, Mr. Gligorov has not demonstrated a good-faith basis for seeking discovery from the corporate defendants. Discovery, after all, is not a tool for plaintiffs to take a stab at jurisdictional theories that lack any factual anchor in the complaint's allegations. *See Livnat*, 851 F.3d at 57 (affirming denial of jurisdictional discovery into items that would prove a theory of jurisdiction plaintiffs "d[id] not even claim" existed); *Naartex*, 722 F.2d at 788 (affirming denial of jurisdictional discovery where "the pleadings contained no allegations of specific facts that could establish the requisite contacts with the District"); *Bastin*, 104 F.3d at 1396 (affirming denial of jurisdictional discovery because it would be "nothing more than a fishing expedition").

To be sure, Mr. Gligorov alleges that "representatives" of the corporate defendants attended at least one conspiratorial meeting in the Beverly Hills Hotel. App. 26. But Mr. Gligorov has not explained how discovery about such an alleged meeting could change the jurisdictional calculus given the lack of any material connection between the United States and this pervasively foreign conspiracy among foreign defendants to injure a foreign businessman's reputation in his foreign business affairs.

**IV**

For the foregoing reasons, the judgment of the district court dismissing the complaint for lack of personal jurisdiction is affirmed.

*So ordered.*